IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

MICHAEL ATKINSON,    )
                     )
        Plaintiff,   )    Civil Action No.:
                     )    1:23-CV-00142-CBB
    vs.              )
                     )
CAPTAIN  APODACA,    )    Christopher B. Brown
CORRECTIONS OFFICER  )    United States Magistrate Judge
HILDERBRAND, CORRECTIONAL )
OFFICER  BAUER, CORRECTIONAL )
OFFICER  SIEGWORTH,  )
LIEUTENANT  DIEMER,  )
                     )
        Defendants.  )

## MEMORANDUM OPINION[1]

**Christopher B. Brown, United States Magistrate Judge.**

## I.    Introduction

This civil rights action was initiated by pro se Plaintiff Michael Atkinson ("Atkinson") against several Corrections Defendants[2] who are employed by the Pennsylvania Department of Corrections ("DOC").  Atkinson generally alleges Corrections Defendants violated his federal civil rights as well as rights under Pennsylvania law while he was incarcerated in the DOC at State Correctional Institution ("SCI") at Forest.

---

[1]    All parties have consented to jurisdiction before a United States Magistrate Judge pursuant to 28 U.S.C. § 636.  *See* ECF Nos. 2, 22.

[2]    Corrections Defendants include Captain Apodaca, Corrections Officer ("C/O") Hildebrand, C/O Bauer, C/O Siegworth, and Lieutenant ("Lt.") Diemer.

The Court has subject matter jurisdiction under 28 U.S.C. § 1331, as Atkinson brings claims pursuant to 42 U.S.C. § 1983 and has supplemental jurisdiction under 28 U.S.C. § 1367 for Atkinson's state law claims. Venue is proper in this district, as the alleged acts and omissions giving rise to Atkinson's claims occurred at SCI-Forest located in Forest County, Pennsylvania in this district.[3] 28 U.S.C. § 118(c).

Presently pending before the Court is Corrections Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. ECF No. 35. The motion is fully briefed and ripe for consideration. ECF Nos. 36, 54.

For the reasons that follow, Corrections Defendants' motion for summary judgment is granted in part and denied in part.

## II.    Background

Atkinson is an inmate currently in the custody of DOC and incarcerated at SCI Houtzdale. He brings this action for alleged civil rights violations he suffered while incarcerated at SCI Forest. Unless otherwise stated, the facts are undisputed.

On May 21, 2021, Atkinson was being strip searched by C/Os Seigworth and Hildebrand prior to going to the recreation yard. ECF No. 37 at ¶ 14. It was during this search that a fishing line made of a bed sheet was found and confiscated from Atkinson. *Id.* As consequence for possessing contraband, Atkinson was denied yard time, issued a misconduct, and escorted back to his cell by several non-party

---

[3]    This action was originally referred to Chief Magistrate Judge Richard A. Lanzillo and was later referred to the undersigned pursuant to Administrative Order 2024-12 on October 25, 2024.

corrections officials. *Id*. at ¶¶ 15-16.  Once in his cell, Atkinson slipped a hand out of the handcuffs and pulled on a tether which was attached to them in an attempt to take the it into his cell. *Id*. at ¶ 17.  Atkinson admits his conduct but maintains he did "this in protest of the violation of his right to outdoor yard time a mandatory amount of time." ECF No. 55 at ¶ 17.  Atkinson refused to let go of the tether as correctional officials held on to it.  Captain Apodaca joined the officers, and, after some discussion, deployed oleoresin capsaicin ("OC") spray into Atkinson's cell for his failure to comply with their direction to release the tether. ECF No. 37 at ¶¶ 18-20.  Thereafter, a struggle ensued and the corrections officials were able to take possession of the restraints from Atkinson. *Id*. at ¶ 21.  Atkinson then placed his right arm through the cell wicket. *Id*. at ¶ 22.  According to Corrections Defendants, Atkinson kept his arm in the wicket and requested a "negotiator" instead of going to medical to be decontaminated from the OC spray. *Id*. at ¶ 23.  Atkinson disputes this and maintains he "wanted medical attention without further assault by officers" and that is why "psych was requested." ECF No. 55 at ¶ 23.

After a period of time, Lt. Diemer arrived at the cell and Atkinson was escorted by C/O Hildebrand to medical triage for an examination. ECF No. 37 at ¶ 24.  All property was removed from Atkinson's cell, save for a mattress, pillow, linens, toothbrush, toothpaste, and soap. *Id*. at 25.  After the medical exam, Atkinson was escorted back to his cell by C/Os Hildebrand and Bauer. ECF No. 37 at ¶ 26.  When Atkinson returned, he refused to be placed in the cell and sat down on the floor in protest. *Id*. at ¶ 27.  Corrections Defendants maintain that Atkinson

3

sat down because he did not believe there was enough soap or toothpaste in the cell. *Id*. at ¶ 28.  Atkinson maintains there was nothing in the cell at all as "they took everything."[4] ECF No. 55 at ¶ 28.  It was then Atkinson claims C/Os Hildebrand and Bauer slammed him to the floor, struck and kicked him, and caused him pain and bruising. *Id*. at ¶ 27; ECF No. 16 at ¶¶ 23-24; ECF No. 54 at p. 3.[5]  Atkinson further claims that Lt. Diemer watched C/Os Hildebrand and Bauer assault him and did not stop them nor took action to protect him. ECF No. 16 at ¶ 25. Corrections Defendants dispute Atkinson's version of events and maintain that the supplied video footage of the events support that C/Os Hildebrand and Bauer did not use any force with Atkinson. ECF No. 36 at 10-11.  Atkinson maintains that Corrections Defendants "destroyed the video." ECF No. 55 at ¶ 27.

Atkinson was then escorted to the Restricted Housing Unit ("RHU") intake cell/strip cage by several corrections officials including C/O Bauer who provided him a clean jumpsuit while his cell was decontaminated. ECF No. 37 at ¶ 29.  Atkinson was placed back in his cell without further incident. *Id*. at ¶ 30.

On June 29, 2021, as a result of his conduct, Atkinson was found guilty of three misconducts and sentenced to fifteen days in disciplinary custody by DOC officials. *Id*. at ¶ 31.  In response, Atkinson filed a grievance that alleged abuse which was subsequently reviewed by the Secretary's Office of Inmate Grievances

---

[4]    Atkinson seemingly disputes the Corrections Defendants' account that he protested a return to his cell because there was not enough soap and toothpaste, and claims "all his property" "was taken as retaliation." ECF Nos. 16 at ¶ 22; 55 at ¶ 25.

[5]    Atkinson alleges in his amended complaint that "Richards" also assaulted him but does not name him as a Defendant in this lawsuit. ECF No. 16 at ¶ 24.

and Appeals ("SOIGA") who concluded the allegations were "unsubstantiated." *Id*. at ¶ 33.

Atkinson now brings claims for excessive force, assault, failure to protect, deprivation of property, and retaliation. ECF No. 16 at ¶¶ 28-39.  In his response to the motion for summary judgment, Atkinson admits he cannot bring claims for deprivation of property and retaliation as a matter of law. ECF No. 54 at ¶¶ 3-4.  As a consequence, he is deemed to have withdrawn those claims and summary judgment will be granted in favor of Corrections Defendants for those claims.[6] Given Atkinson's concessions and the leniency afforded to pro se litigants, the following causes of action remain:

1. An Eighth Amendment claim for excessive force under 42 U.S.C. § 1983 against Captain Apodaca for using OC spray;

2. An Eighth Amendment claim for excessive force under 42 U.S.C. § 1983 against C/Os Hildebrand and Bauer for the alleged altercation that resulted from Atkinson refusing to return to his cell;

3. An Eighth Amendment claim for failure to protect under 42 U.S.C. § 1983 against Lt. Diemer for failing to intervene to end the alleged assault by C/Os Hildebrand and Bauer;

4. A claim for assault under Pennsylvania law against Captain Apodaca for using OC spray; and

5. A claim for assault under Pennsylvania law against C/Os Hildebrand and Bauer for the altercation that resulted from Atkinson refusing to return to his cell.

---

[6]    It appears that the only claim against Defendant Siegworth was Atkinson's deprivation of property claim. *See* ECF No. 16 at ¶ 37. Given Atkinson's concession that this claim is not viable, Defendant Siegworth is entitled to summary judgment on this claim.

Atkinson seeks compensatory and punitive damages as well as establishment of a new DOC policy for corrections officers' failure to intervene. ECF No. 16 at ¶¶41-43.

Corrections Defendants move for summary judgment on the remaining claims.

### III.    Standard of Review – Fed. R. Civ. P. 56

The standard for assessing a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure is well settled. Rule 56(a) requires the court to enter summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Under this standard "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (emphasis in original). A disputed fact is "material" if proof of its existence or nonexistence would influence the outcome of the case under applicable substantive law. *Anderson*, 477 U.S. at 248; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Loc. 514, United Broth. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287–88 (3d Cir. 1991).

When determining whether a genuine issue of material fact remains for trial, the court must view the record and all reasonable inferences to be drawn therefrom in favor of the nonmoving party. *Anderson*, 477 U.S. at 256. To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings. Instead, once the movant satisfies its burden of identifying evidence that demonstrates the absence of a genuine issue of material fact, the nonmoving party must go beyond its pleadings with affidavits, depositions, answers to interrogatories or other record evidence to demonstrate specific material facts that give rise to a genuine issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In addition to the above, Atkinson is proceeding pro se, thus he is entitled to a liberal reading of his pleadings and documents filed in opposition to the pending motion. *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("[t]he obligation to liberally construe a pro se litigant's pleadings is well-established."). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax, and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982). Nonetheless, at the summary judgment stage of the proceedings, the Court need not credit bald assertions or legal conclusions unaccompanied by evidentiary support. *Celotex Corp.*, 477 U.S. at 324. "[A] pro se plaintiff is not relieved of his obligation under [Federal Rule of Civil Procedure] 56 to point to competent evidence

in the record that is capable of refuting a defendant's motion for summary judgment." *Alston v. Little*, No. 1:22-CV-00183-SPB, 2024 WL 3048017, at *2 (W.D. Pa. May 28, 2024) (quoting *Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017)) (citation omitted).

Because Atkinson is a pro se litigant, this Court will consider the facts and make inferences where it is appropriate. In examining the record, and in consideration of Atkinson's pro se status, the factual allegations set forth in his verified Amended Complaint also will be considered as evidence to the extent that they are based on his personal knowledge. *Parkell v. Danberg*, 833 F.3d 313, 320 n.2 (3d Cir. 2016) ("Because [statements in verified complaint and other court filings] were signed under penalty of perjury in accordance with 28 U.S.C. § 1746, we consider them as equivalent to statements in an affidavit."); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion). *See also Brooks v. Kyler*, 204 F.3d 102, 108 n.7 (3d Cir. 2000) (noting that an affidavit is "about the best that can be expected from [a pro se prisoner] at the summary judgment phase of the proceedings").

Where the events at issue are depicted on video, the court must consider that evidence in determining whether a genuine dispute of material fact remains for trial and view the facts in the light represented by the video. *Scott v. Harris*, 550 U.S. 372, 380–81 (2007). On a motion for summary judgment, "where there are video recordings of the incident in question, [the court] need not adopt the non-movant's version of the facts if the recording 'blatantly contradict[s]" the non-

movant's version 'so that no reasonable jury could believe it.'" *McDowell v. Sheerer*, 374 Fed. Appx. 288, 292 (3d Cir. 2010)(unpublished) (quoting *Scott*, 550 U.S. at 380).

## IV. Discussion

### a. Eleventh Amendment Immunity

As an initial matter, Corrections Defendants argue that Atkinson's claims against them in their official capacities are barred by the Eleventh Amendment. ECF No. 36 at 3-5. While Atkinson's amended complaint indicates he is naming Corrections Defendants in their individual capacities only, ECF No. 16 at ¶¶ 4-8, in his response brief, he asks the Court "to consider Defendants in both official and individual capacities[.]" ECF No. 54 at 1. Accordingly, the Court construes Atkinson as asserting claims against Corrections Defendants in both their individual and official capacities. As Corrections Defendants are correct that they are entitled to Eleventh Amendment immunity for official capacity claims, summary judgment will be granted as to any claims raised against them in their official capacities.

Official capacity claims against an employee of the state are indistinguishable from claims against the state itself. The Eleventh Amendment bars suits against a state and its agencies in federal court that seek monetary damages. *Id.* Because a lawsuit against state officials acting in their official capacities are suits against the employing state agency, such suits are barred by the Eleventh Amendment. *Laskaris v. Thornburgh*, 661 F.2d 23 (3d Cir. 1981)

(Pennsylvania); *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977) (state agencies); *Edelman v. Jordan*, 415 U.S. 651 (1974) (state employees acting in their official capacity). Specifically,

> [b]ecause the Commonwealth of Pennsylvania's Department of Corrections is part of the executive department of the Commonwealth, see Pa.Stat.Ann., tit. 71, § 61, it shares in the Commonwealth's Eleventh Amendment immunity. Such immunity, however, may be lost in one of two ways: (1) if the Commonwealth waived its immunity; or (2) if Congress abrogated the States' immunity pursuant to a valid exercise of its power.

*Lavia v. Pennsylvania, Dept. of Corrections*, 224 F.3d 190, 195 (3d Cir. 2000). Congress has not expressly abrogated this constitutional immunity for civil rights lawsuits against the Pennsylvania Department of Corrections and Pennsylvania has not waived its immunity. *Id.* On the contrary, Pennsylvania has enacted a statute invoking its Eleventh Amendment immunity. *See* 42 Pa.C.S.A. § 8521(b). This is fatal to Atkinson's claims against the Corrections Defendants sued in their official capacities for damages and, as a result, Corrections Defendants are immune from any claims made against them in their official capacities and are entitled to summary judgment on this basis.[7]

### b. Sovereign Immunity

Similarly, Corrections Defendants argue that Atkinson's assault claims under Pennsylvania law against Captain Apodaca and C/Os Hildebrand and Bauer

---

[7]    Atkinson does not seek injunctive relief and the Court has no legal authority to enact a policy with DOC. *See* ECF No. 16 at ¶ 43; *Holt v. Hobbs*, 574 U.S. 352, 364 (2015) ("Prison officials are experts in running prisons and evaluating the likely effects of altering prison rules, and courts should respect that expertise.").

are barred by sovereign immunity. ECF No. 36 at 19-22.  Corrections Defendants are correct and summary judgment is granted on this basis as well.

Officials and employees of the Commonwealth of Pennsylvania, like Corrections Defendants, are entitled to sovereign immunity for acts committed within the scope of their employment and are immune from suit for those acts. 1 Pa. C. S. A. § 2310.  Pennsylvania has only waived its sovereign immunity for an express set of circumstances[8] and has not waived its sovereign immunity for intentional torts, like the assault claims asserted here, committed by Commonwealth employees acting within the scope of their employment. *Kull v. Guisse*, 81 A.3d 148, 157 (Pa. Cmmw. 2013); *Tingey v. Gardner*, 827 Fed. Appx. 195, 197 (3d Cir. 2020)(unpublished); *Brown v. Smith*, No. 1:18-CV-00193, 2019 WL 2411749, at *4 (W.D. Pa. June 7, 2019) (sovereign immunity barred Pennsylvania state law claims of assault and battery against DOC officials).

A Commonwealth employee acts within the scope of their employment where the conduct alleged is "of the same general nature as that authorized or incidental to the conduct authorized, occurring substantially within the authorized time, and done to serve the employer." *Robertson v. Zaken*, 271 A.3d 543 (Pa. Cmmw. 2021). It is undisputed that the use of OC spray by Captain Apodaca and alleged assault of Atkinson by C/Os Hildebrand and Bauer were done in the scope of their general

---

[8]     Pennsylvania has waived its sovereign immunity for claims of negligence against Commonwealth employees involving (1) vehicle liability; (2) medical-professional liability; (3) care, custody, or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody or control of animals; (7) liquor store sales; (8) National Guard activities; (9) toxoids and vaccines; and (10) sexual abuse. 42 Pa. C.S.A. § 8522(a)-(b).

responsibilities as corrections officials, *e.g.,* the use of force to restore order and to address security concerns Atkinson created by fighting to control his restraints and refusing to enter his cell. They did so as employees of SCI Forest and undertook those efforts in furtherance of the DOC's interests. Accordingly, Captain Apodaca as well as C/Os Hildebrand and Bauer are immune from Atkinson's state law claims for assault and summary judgment is granted on those claims as well.

### c.  Eighth Amendment Excessive Force Claims

In general, the Eighth Amendment's protection against cruel and unusual punishment is the "primary source of substantive protection in cases where an inmate challenges a prison official's use of force as excessive and unjustified." *Brooks*, 204 F.3d at 105. The core inquiry of an excessive force claim is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). The prisoner need not show he suffered a significant injury to state an excessive use of force claim, but the physical force used must be more than *de minimis*. *Hudson*, 503 U.S. at 8-10. "The Eighth Amendment's prohibition of 'cruel and unusual' punishment necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9–10. *Brooks*, 204 F.3d at 104 ("Following *Hudson's* focus on the force used, as opposed to the injury inflicted, we conclude that although the degree of injury is relevant for any [constitutional violation] analysis, there is no

12

fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence in order to state a claim for wanton and excessive force"). In other words, the Court should focus on the force used by the official and not the resulting injury. *Flood v. Schaefer*, 439 Fed. Appx. 179, 182 (3d Cir. 2011)(unpublished). However, not "every malevolent touch by a prison guard" violates the Constitution. *Hudson*, 503 U.S. at 9.

In determining whether the force used was unconstitutionally excessive, the court must examine several factors including: the need for the application of force, the relationship between the need and the amount of force used, the extent of injury inflicted, the extent of threat to the safety of staff and inmates, and any efforts to temper the severity of a forceful response. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). The application of these factors to any given case is necessarily fact specific, and "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989).

### i. Captain Apodaca's use of OC Spray

Captain Apodaca argues he is entitled to summary judgment on Atkinson's claim for excessive force for using OC spray on Atkinson because the use of OC spray was reasonable under the circumstances. ECF No. 36 at 9-10. The Court agrees.

Atkinson's claim against Captain Apodaca for the use of OC spray ultimately fails because there is insufficient evidence that a reasonable juror could conclude

his use of OC spray was maliciously and sadistically intended to cause harm to Atkinson. "The use of chemical agents to subdue recalcitrant prisoners is not cruel and unusual when reasonably necessary." *Gibson v. Flemming*, 837 Fed. Appx. 860, 862 (3d Cir. 2020)(unpublished) (citations omitted).

It is undisputed here that Atkinson was searched prior to yard time and corrections officials found contraband on him. After that occurred, they escorted Atkinson back to his cell. Once in his cell, Atkinson slipped his hand out of one of the handcuffs and pulled on the tether attached thereto in an attempt to pull it into his cell. Corrections officers maintained control of the tether on one side of the cell door and Atkinson maintained control of the tether on the other side. During this stalemate, it was then that Captain Apodaca arrived, conversed with Atkinson, showed him the OC spray can, and then used it so guards could regain possession of the restraints. Atkinson does not dispute that he slipped out of his handcuff and pulled on the tether, in an attempt to take the restraints into his cell – he only explains he did so because he was denied yard time. This is not a genuine issue of material fact that would preclude summary judgment. The evidence is undisputed that force was needed to secure Atkinson after he slipped out of his handcuffs, attempted to pull his restraints into the cell, attempted to create a security risk, and refused to comply. When this occurred, the surveillance video depicts Captain Apodaca with a can of OC spray in his hand for some time evidently showing it to Atkinson and presumably discussing its use should he fail to comply. After some time passed, and Atkinson did not comply, was the spray discharged. Under the

14

circumstances, the use of OC spray was reasonable and did not amount to excessive force.  Indeed, several courts have found the use of OC spray reasonable to gain compliance with an uncooperative inmate. *Passmore v. Ianello*, 528 Fed. Appx. 144, 148 (3d Cir. 2013)(unpublished) (use of OC spray reasonable when inmate refused orders to take a shower pursuant to prison policy); *Warrick v. Harry*, No. 3:23-CV-591, 2024 WL 2059084, at *5 (M.D. Pa. May 8, 2024) (use of OC spray reasonable when inmate refused orders to return to his cell) (collecting cases); *Easley v. Tritt*, No. 1:17-CV-930, 2021 WL 978815, at *15 (M.D. Pa. Mar. 16, 2021) (use of OC spray reasonable when inmate refused orders to come to cell door and be handcuffed).

Further, it is undisputed that Atkinson received prompt medical treatment after he was sprayed with OC spray and suffered no serious nor lasting injuries. *Gibson*, 837 F. App'x at 862 (finding the "temporary discomfort" from OC spray were not injuries that supported an excessive force claim).

There was also a reasonable threat to the safety of staff as the OC spray was used to gain control over Atkinson who pulled free of his handcuffs and attempted to pull his tether and take the restraints into his cell.  Atkinson's own actions put his and the corrections officials' safety at risk.  After the OC spray was used, corrections officials were able to regain control of the restrains and no further force was used on Atkinson.  Therefore, viewing the record in the light most favorable to Atkinson, the record does not support a finding that Captain Apodaca acted maliciously or sadistically to cause Atkinson harm.  Rather, the undisputed record shows Captain Apodaca acted in good faith to restore order and discipline to gain

control over Atkinson.[9]  Captain Apodaca is therefore entitled to summary judgment on Atkinson's Eighth Amendment excessive force claim.

### ii.  C/Os Hildebrand and Bauer

Atkinson also claims C/Os Hildebrand and Bauer used excessive force against him.  Specifically, after he was sprayed by OC Atkinson was seen by medical and then refused to return to his cell. Instead, he sat on the floor while in restraints and it was then that Atkinson claims C/Os Hildebrand and Bauer slammed him to the ground, kicked and punched him, and caused him pain and bruising. ECF No. 16 at ¶¶ 23-24; ECF No. 54 at p. 3; ECF No. 55 at ¶ 27.

C/Os Hildebrand and Bauer argue they are entitled to summary judgment on this claim because they did not use **any** force against Atkinson.  They maintain the video footage they submitted shows no such force was used against Atkinson.  They also argue Atkinson has not produced any evidence of his injuries. ECF No. 36 at 10-11.  As questions remain whether force was or was not used, and whether it was excessive, summary judgment will be denied in this respect.

When an allegation of excessive force is caught on videotape and the videotape refutes an inmate's assertion that excessive force was used, the court need not entertain a factual conflict that rests upon a "visible fiction," *Scott*, 550 U.S. at 381, and may enter summary judgment on an excessive force claim when "no reasonable finder of fact could view the video of the incident and determine that

---

[9]      Corrections Defendants provided videos of the events transpiring before and a short time after the use of the OC spray.  The videos depict an accurate account of the undisputed facts presented by the parties.

[defendants] acted maliciously and sadistically[.]" *Tindell v. Beard*, 351 Fed. Appx. 591, 596 (3d Cir. 2009)(unpublished).

Corrections Defendants' contend the supplied video footage undisputedly shows C/Os Hildebrand and Bauer did not use any force against Atkinson. While true, the submitted footage only depicts the initial incident where Atkinson was sprayed with OC spray. It does not, however, depict the alleged assault by C/Os Hildebrand and Bauer, which undisputedly happened after the OC spray incident.

The following chronology of relevant events is undisputed:

- OC spray was deployed at 8:19AM;

- Atkinson was assessed by medical staff at 9:21AM;

- Atkinson was sent back to his cell at 9:33AM. He sat down in front of his cell and refused to enter his cell. Atkinson claims he was assaulted at this time by C/Os Hildebrand and Bauer;

- Atkinson was escorted and placed in the secured intake cell at 9:50AM.

*See* ECF No. 38-5 at p. 11 (providing a timeline chronology of the events at issue).

According to the timestamp on the first video, the recording begins at 8:10AM and shows Atkinson being escorted back to his cell. Defs.' Ex. H. It shows OC spray was deployed through the cell door's wicket at approximately 8:18AM. Corrections officers thereafter gained control of the tether and handcuff and Atkinson hung his arm out of the wicket from approximately 8:19AM until the video concludes at 8:44AM. *Id*. The second video is ostensibly from a hand-held camera and is not date or timestamped but appears to be a continuation of the first video as it depicts

Atkinson's arm hanging out of his wicket for approximately ten minutes until the video concludes. Defs.' Ex. I.  Neither video depicts Atkinson being removed from his cell after the OC spray was used to be escorted to medical for assessment, nor do the videos depict the events when Atkinson was escorted back to his cell thereafter. In other words, there is no footage of Atkinson's return to his cell, his refusal to enter it, him seated, nor whether C/Os Hildebrand and Bauer slammed, punched, or kicked him.  Thus, the supplied video does not account for the time between approximately 9:30AM and 9:50AM which is when Atkinson maintains he was assaulted by C/Os Hildebrand and Bauer.  Accordingly, Corrections Defendants' argument they are entitled to summary judgment because "[a] review of the video fails to depict any physical force alleged" is rejected, as the videos do not depict the undisputed timeline when the alleged altercation occurred.[10] ECF No. 36 at 11.

Irrespective of the video evidence or lack thereof, Corrections Defendants categorically deny using any force on Atkinson.  While that may be true, at this stage, the Court must consider the evidence in the light most favorable to Atkinson, including statements made by him based on his personal knowledge as set forth in his verified filings, to determine whether a reasonable jury could conclude that C/Os Hildebrand and Bauer used excessive force against him. *See Whitley*, 475 U.S. at 319; *Parkell*, 833 F.3d at 320 n.2.

---

[10]    Elsewhere in the record, the Investigative Report authored by a correction official and attached by Corrections Defendants to their motion indicates no video footage was preserved "of the escort of Inmate Atkinson . . . from the intake cell to JD2018, when Atkinson alleges he was assault by staff" and because of the memory capabilities of the video system, "no footage could be retrieved." ECF No. 38-6 at p. 15.

Considering the first factor, the "need for the application of force," the undisputed facts make clear Atkinson sat on the floor in apparent protest/refusal to comply with corrections officers' orders to enter his cell.  Such an act would necessarily require some force to gain control over him and secure him in his cell.

Considering the second factor, "the relationship between the need and amount of the force that was used," Atkinson maintains that he was restrained and passively resisting while sitting on the floor.  He further maintains he was slammed to the ground, kicked and punched on his back and body.  Given that Atkinson claims he was restrained and passively resisting, a jury could conclude that the level of force used to compel him to enter his cell was unjustified and not applied in a good-faith effort to maintain and restore discipline and order. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) ("[p]unching and kicking someone who is handcuffed behind his back and under the control of at least six prison guards as he is being thrown into cabinets and walls is 'repugnant to the conscience of mankind,' absent the extraordinary circumstances necessary to justify that kind of force"); *Davis v. Berks Cnty.*, No. CIV.A. 04-01795, 2007 WL 516128, at *5 (E.D. Pa. Feb. 8, 2007) (choking, kicking, and punching a handcuffed inmate in his cell were not necessary to enforce prison rules and factored against granting summary judgment for excessive force claim).

As to the third factor, the "extent of injury inflicted," Atkinson offers no evidence of the severity of his injuries besides his own assertions that he suffered pain and "bruising." *See* ECF No. 54 at 3.  Corrections Defendants argue they are

entitled to summary judgment due to this lack of evidence.  The Court disagrees.

"[T]he relatively minor nature of an injury alone is not grounds for summary

judgment [in the Eighth Amendment context].  Rather, it is only one feature to be

considered by the fact-finder in evaluating the allegations." *Wesley v. Hollis*, No.

CIV.A. 03-3130, 2007 WL 1655483, at *9 (E.D. Pa. June 6, 2007). *See accord.*

*Brooks*, 204 F.3d at 104.  An "inmate who complains of a push or shove that causes

no discernible injury almost certainly fails to state a valid excessive force claim[,]"

but an "inmate who is gratuitously beaten by guards does not lose his ability to

pursue an excessive force claim merely because he has the good fortune to escape

without serious injury[.]"  *Wilkins*, 559 U.S. at 38 (cleaned up).  Given that Atkinson

claims he suffered pain and bruising from being slammed to the ground and

repeatedly punched and kicked while restrained and passive, the extent of injury

suffered by him is but one factor a jury should evaluate in determining whether

excessive force was used. *Johnson v. New Jersey State Prison*, No.

CV171567PGSJBD, 2024 WL 82851, at *5 (D.N.J. Jan. 8, 2024) (declining to grant

summary judgment on the sole basis that inmate-plaintiff did not suffer serious

injuries, including a superficial injury to his finger, a superficial scar under his eye,

a bruise behind his ear and mild swelling of his lower lip when he was not

disobeying orders and was kicked and punched while on the ground).

        As for the last two factors, the threat to the safety to staff and inmates and

efforts made to temper the severity of the response, given the clear disputes as to

whether the use of force even occurred, these factors also weigh against granting

summary judgment. Viewing the facts in Atkinson's favor, a reasonable fact finder could conclude that Atkinson posed little threat to the safety of staff and other inmates as he was restrained and passively sitting on the floor when force was allegedly used. Further, it is alleged C/Os Hildebrand and Bauer used no efforts to temper their response but instead slammed Atkinson to the ground and punched and kicked him to get him to comply. *Miller v. Berrios*, No. CV 21-9912 (SDW-CLW), 2023 WL 3452623, at *8 (D.N.J. May 15, 2023) (corrections officers not entitled to summary judgment where plaintiff alleged she was slammed to the ground and corrections officers stomped on her legs while she was passively resisting).

Fundamentally, whether C/Os Hildebrand and Bauer used any force against Atkinson and whether that force was excessive is a "classic factual dispute to be resolved by the fact finder." *Smith*, 293 F.3d at 650. Corrections Defendants did not provide incontrovertible proof that they did not use force against Atkinson. While a reasonable jury could conclude that construing all the disputed facts in the Corrections Defendants' favor that no reasonable jury could find for Atkinson, at the summary judgment stage, the Court must construe all the facts in favor of the non-moving party – here Atkinson. And considering those facts in a light most favorable to Atkinson, a reasonable jury could conclude C/Os Hildebrand and Bauer used excessive force against him. Accordingly, Corrections Defendants motion for summary judgment on this claim is denied.[11]

---

[11]    Corrections Defendants also move for summary judgment based on qualified immunity. However, their argument with respect to the excessive force claim against C/Os Hildebrand and Bauer is based on the premise that no constitutional violation occurred because Atkinson's

### d. Eighth Amendment Failure to Intervene Claim Against Lt. Diemer

Atkinson alleges that Lt. Diemer violated the Eighth Amendment by failing to intervene during the alleged assault of him by C/Os Hildebrand and Bauer.  Lt. Diemer argues there is no evidence that the physical altercation happened. ECF No. 36 at 12.  Summary judgment is denied on this basis.

A corrections officer may be liable under the Eighth Amendment for failing to stop an ongoing constitutional violation if she "had a reasonable opportunity to intervene and simply refused to do so." *Smith*, 293 F.3d at 650.  "[L]iability will only attach if the opportunity to intervene is realistic and reasonable." *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) (cleaned up).  For failure to intervene claims, if an inmate fails to show that excessive force was used against him, "his failure to intervene claim must fail." *Fears v. Beard*, 532 Fed. Appx. 78, 82 (3d Cir. 2013)(unpublished).

As set forth above, because there are disputed issues of material facts concerning whether C/Os Hildebrand and Bauer used excessive force against Atkinson, Lt. Diemer is likewise not entitled to summary judgment on Atkinson's failure to intervene claim. *Smith*, 293 F.3d at 650-51; *Miller*, 2023 WL 3452623, at *8 (declining to grant summary judgment on a failure to intervene claim where

---

"allegations of excessive force against [those Defendants] lacked evidentiary support and an investigation found them to be entirely 'unsubstantiated.'" ECF No. 36 at 17.  Because as stated, issues of fact prevent summary judgment on Atkinson's excessive force claim, and because Corrections Defendants do not provide any argument regarding whether the right was clearly established, Corrections Defendants are not entitled to summary judgment on the basis of qualified immunity. *Reedy v. Evanson*, 615 F.3d 197, 223 (3d Cir. 2010) (burden of establishing entitlement to qualified immunity on summary judgment is on the defendant). *See also Collick v. William Paterson U.*, 699 Fed. Appx. 129, 131 n. 10 (3d Cir. 2017)(unpublished).

disputed facts existed surrounding the use of excessive force). Accordingly, Corrections Defendants' motion for summary judgment is denied in this respect.

### e. Damages

Lastly, Corrections Defendants argue that Atkinson is not entitled to compensatory or punitive damages.

Corrections Defendants argue that Atkinson is not entitled to compensatory damages because "there is no dispute that [Atkinson] did not suffer physical injury directly at the hands of Corrections Defendants." ECF No. 36 at 22. As stated above, Atkinson maintains he suffered pain and bruising as a result of the altercation with C/Os Hildebrand and Bauer, and this argument is summarily rejected.[12]

Likewise, Corrections Defendants argue that Atkinson is not entitled to punitive damages because "the claims of physical assault were found to be lack(sic) evidentiary support." ECF No. 36 at 23. Again, as stated above, Atkinson's claims regarding the physical assault are in dispute and may support a jury finding that Corrections Defendants acted with the requisite motive to assess punitive damages. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

---

[12]    Plaintiff may be entitled to compensatory damages for "physical harm [suffered] during and after the events at issue, including ill health, physical pain, . . . discomfort, and any such physical harm that [he] is reasonably certain to experience in the future." Third Circuit Model Jury Instructions (Civil) § 4.8.1 (Sept. 2024). Also, "compensatory damages may be awarded once the plaintiff shows actual injury despite the fact the monetary value of the injury is difficult to ascertain." *Brooks v. Andolina*, 826 F.2d 1266, 1269 (3d Cir. 1987).

## V.    Conclusion

For the foregoing reasons, the Corrections Defendants' motion for summary judgment is granted in part and denied in part.  The Court denies Corrections Defendants' motion related to Atkinson's Eighth Amendment claim for excessive force under 42 U.S.C. § 1983 against C/Os Hildebrand and Bauer for the alleged altercation that resulted from Atkinson refusing to return to his cell, denies Corrections Defendants' motion related to Atkinson's Eighth Amendment claim for failure to protect under 42 U.S.C. § 1983 against Lt. Diemer for failing to intervene to end the alleged assault by C/Os Hildebrand and Bauer; and denies Corrections Defendants' motion with respect to compensatory and punitive damages. Corrections Defendants' motion is granted in all other respects.

An appropriate Order follows.


DATED this 5th day of March, 2025.



BY THE COURT:


s/Christopher B. Brown
Christopher B. Brown
United States Magistrate Judge

cc:    MICHAEL ATKINSON
        NS8193
        SCI HOUTZDALE
        P.O. Box 1000
        209 Institution Drive
        Houtzdale, PA 16698-1000

        Counsel of record
        *via CM/ECF electronic filing*